UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HELBERTH CABRERA, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the class*,

                              Plaintiff,

          -against-

CITY SCRAP METAL, INC., *et al.*,

                             Defendants.
-----------------------------------------------------------X

**REPORT & RECOMMENDATION**
21 CV 5601 (RPK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

        On October 7, 2021, Helberth Cabrera ("plaintiff"), individually and on behalf of FLSA collective plaintiffs and the class, commenced this action against corporate defendants City Scrap Metal Inc., d/b/a City Scrap Metal, d/b/a City Metal Traders ("City Scrap"), and City Metal Supply Inc., d/b/a City Scrap Metal, d/b/a City Metal Traders ("City Metal"), and individual defendants Michele Rothman and Alan Rothman, seeking damages for unpaid minimum wages, unpaid overtime wages, and violations of wage notice and wage statement requirements, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. and the New York Labor Law ("NYLL") §§ 650, et seq. (Compl.[1]).

        Currently pending before this Court is plaintiff's motion for default judgment. For the reasons set forth below, the Court respectfully recommends that plaintiff's motion be granted, and a default judgment entered against defendants.

---

[1] Citations to "Compl." refer to the Complaint, filed Oct. 7, 2021, ECF No. 1.

**FACTUAL BACKGROUND**

Plaintiff Cabrera is a resident of Queens County, New York, and worked as a laborer in defendants' warehouse from in or around February 2019 until on or around June 2019.[2] (Compl. ¶¶ 5, 25). Defendants are alleged to collectively own and operate two metal recycling centers: City Scrap, located at 49-29 31st Street, Long Island City, New York 11101, and City Metal, located at 34-10 Borden Avenue, Long Island City, New York 11101. (Id. ¶¶ 6-7). The individual defendants are alleged to be executive officers and principals of the corporate defendants. (Id. ¶¶ 9-10). Both individual defendants are alleged to have supervisory power over the employees, including the ability to hire and fire, determine the rate and method of compensation, and set employees' schedules and conditions of employment. (Id.)

According to the Complaint, plaintiff worked six days per week throughout his employment. From Monday through Friday, he worked from 7:30 a.m. to 5:00 p.m., and on Saturday, he worked from 7:30 a.m. to 1:00 p.m. (Id. ¶ 26). In total, plaintiff alleges that he worked 53 hours per week. (Id.) Plaintiff further asserts that defendants required plaintiff to perform work for "at least half" an hour past his scheduled shifts without payment because defendants failed to track plaintiff's hours. (Id. ¶ 27). Thus, plaintiff contends that he worked at least seven (7) additional hours per week for which he was uncompensated. (Id.) He further states that, throughout his employment with defendants, plaintiff was paid $13 per hour for each of the first 40 hours he worked, an amount below the statutory minimum wage of $15 per hour pursuant to the NYLL. (Id. ¶ 28).

Additionally, plaintiff states that he did not receive proper overtime compensation for

---

[2] Plaintiff stated that he brought the action on behalf of a class of individuals who were subject to similar practices and policies by defendants. (Compl. ¶¶ 13, 16). However, plaintiff never moved for class certification. Thus, the Court has only addressed the allegations specific to plaintiff.

.
.

hours worked over 40 in a week, including for the seven additional hours that he worked each week. (Id. ¶¶ 27, 29). Plaintiff also claims that defendants did not provide prior wage notices and also provided "fraudulent wage statements" that did not properly reflect plaintiff's hours. (Id. ¶¶ 32-33).

Plaintiff alleges causes of action under the FLSA and NYLL for failure to pay plaintiff statutory minimum wages[3] and overtime compensation. (See id. ¶¶ 41-42, 51-52). Plaintiff further alleges causes of action under the NYLL for failure to provide proper wage statements and wage notices. (Id. ¶ 53-54). Plaintiff also seeks liquidated damages and attorney's fees and costs. (Id. ¶¶ 46, 48, 55).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint, copies of the Summons and Complaint were served on City Scrap and City Metal by service upon the Secretary of State on October 22, 2021. (See ECF Nos. 8-9). The individual defendants, Alan Rothman and Michele Rothman, were served by service upon a manager at "City Scrap Metal, Inc. at 49-29 31st Street, Long Island City, NY 11101" on November 15, 2021. (See ECF Nos. 15, 16). When defendants failed to file an answer or otherwise respond within the required time period, the Clerk of Court entered a Certificate of Default against all defendants on December 20, 2021. (See ECF No. 19).

On February 2, 2022, plaintiff filed a motion for default judgment (see ECF No. 21), accompanied by the Affirmation of plaintiff's counsel, C.K. Lee, Esq., along with a

---

[3] In the Complaint, plaintiff made claims for unpaid minimum wages under both the FLSA and NYLL. (Compl. ¶¶ 28, 30). However, it appears that plaintiff has abandoned his minimum wage claims pursuant to the FLSA, as plaintiff's damage calculations only include calculations for unpaid minimum wage pay under the NYLL. (ECF No. 22-7). The Court further notes that, as plaintiff's supplemental calculations show, at all time periods during his employment, the plaintiff's minimum wage rates were higher than the FLSA minimum wage rates. (See id.). Thus, since plaintiff no longer appears to request damages for unpaid minimum wages under the FLSA, the Court has not addressed those claims.

3

Memorandum of Law, and plaintiff's calculation of damages. (See Lee Aff.;[4] Pl.'s Mem.;[5] Dam. Calc.[6]). Defendants failed to file anything in response. On February 10, 2022, the Honorable Rachel P. Kovner referred the default judgment motion to the undersigned for a Report and Recommendation.

**DISCUSSION**

I. Default and Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entering a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a). See Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b); New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of Court entered a default judgment against defendants on December 20, 2021. (See ECF No. 19).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it

---

[4] Citations to "Lee Aff." refer to the Affirmation of C.K. Lee, Esq., filed Feb. 2, 2022, ECF No. 22.
[5] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of his Motion for Default Judgment, filed Feb. 2, 2022, ECF No. 23.
[6] Citations to "Dam. Calc." refer to the Plaintiff's Damage Calculations, filed Feb. 2, 2022, ECF No. 22-7.

has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider numerous factors regarding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint; and (3) the amount of money potentially involved, with the more money being involved potentially providing less justification for entering the default judgment. See Fed. R. Civ. P. 54(c) (stating that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, (S.D.N.Y. Oct. 19, 1992). The Court may also consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### A. Liability under the FLSA

Under the FLSA, a plaintiff must prove the following: (1) the defendants are an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment

relationship is not exempted from the FLSA.  See Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

In the Complaint, plaintiff alleges that defendants are joint employers operating a business that has a gross volume business of over $500,000, thus subjecting them to the requirements of the FLSA.  (Compl. ¶ 38).  Plaintiff alleges that he qualifies as a covered employee under the FLSA because defendants' enterprise engaged in interstate commerce.  (See Pl.'s Mem. at 3-4 (citing Archie v. Grand Central Cent. P'ship, Inc., 997 F. Supp. 504, 530

6

(S.D.N.Y. 1998), and noting that courts have found a connection to interstate commerce merely through use of "janitorial/cleaning supplies")).

Accepting plaintiff's allegations as true for purposes of this default, the Court finds that plaintiff has sufficiently alleged that defendant qualifies as an "employer" under the FLSA, and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as an "employee" under the FLSA.[7]

Moreover, plaintiff alleges in the Complaint that during the period of his employment, he regularly worked more than 40 hours per week, was not paid overtime compensation, and was not paid properly for all hours worked due to defendants' policy of "time-shaving." (Compl. ¶¶ 39-42). He claims that, during the time he worked for defendants, he worked six days per week, from 7:30 a.m. to 5:00 p.m. from Monday through Friday, and from 7:30 a.m. to 1:00 p.m. on Saturday for a total of 53 hours. (Id. ¶ 26). Plaintiff alleges he was paid $13 per hour for all hours worked, regardless of whether he should have been paid time and a half for hours worked over 40 in a week. (Id. ¶ 28). Plaintiff further contends that, since he was "required to perform work for at least" 30 minutes past his shift without payment, defendants failed to pay him overtime wages for at least seven additional hours of overtime worked each week. (Id. ¶ 27). Plaintiff therefore argues that his pay was insufficient to meet the overtime requirements of the FLSA. (Id. ¶¶ 40-41); see Shibetti v. Z Rest., Diner & Lounge, Inc., No. 18 CV 856, 2019 WL 11624313, at *7 (E.D.N.Y. Aug. 30, 2019) (finding that plaintiffs adequately alleged a violation of FLSA overtime provisions where plaintiffs stated that "they worked in excess of forty hours a week, and they were not compensated for their overtime labor").

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as

---

[7] See 29 U.S.C. § 213(a) (setting forth the exemptions).

true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state claims under the FLSA for failure to pay overtime wages.

### B. Liability under the NYLL

Plaintiff also alleges that defendant violated the NYLL. The NYLL provides for overtime pay, and also sets forth minimum wage rates. See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146-1.4; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). In addition, an employer is liable under the NYLL if it fails to provide proper wage notices and statements pursuant to the Wage Theft Prevention Act, N.Y. Lab. Law §§ 195(1)(a) and 195(3).

To recover under the NYLL, plaintiff must prove that he is an "employee," and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009). Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law. See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"). Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ." N.Y. Lab. Law § 651(5).

In this case, plaintiff alleges that he was employed by defendants within the meaning of Section 651 of the NYLL. (Compl. ¶ 50). Plaintiff states that defendants willfully failed to pay minimum wages and overtime as required by the NYLL. (Id. ¶ 51; Lee Aff. ¶ 16). Plaintiff also alleges that he was not provided proper wage statements or notices as required by the NYLL. (Compl. ¶¶ 53-54). Accordingly, based on these uncontested allegations, the Court respectfully

recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the NYLL.

### C. Liability of the Individual Defendants: Michele Rothman and Alan Rothman

Plaintiff brings claims against corporate defendants City Scrap and City Metal as well as individual defendants Michele Rothman and Alan Rothman, who are alleged to own and/or operate the corporate defendants. (Compl. ¶¶ 7, 9-10). Individuals may be held jointly and severally liable under the NYLL and the FLSA if they meet the statute's definition of an employer. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (noting that courts in the Second Circuit apply the same analysis for joint liability under the FLSA and NYLL). This definition extends to "'any person . . . employing any individual in any occupation, industry, trade, business or service' or 'any individual . . . acting as [an] employer.'" Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013) (quoting N.Y. Lab. Law §§ 190(3), 651(6)). Courts apply a four-part test examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) (quoting Herman v. RSR Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks omitted)).

Plaintiff alleges that the individual defendants were responsible for all matters related to employees' rates and methods of pay and hours worked at City Scrap and City Metal, with the power to hire and fire employees. (Compl. ¶¶ 9-10). Plaintiff also alleges that, at all times relevant to this action, defendants employed plaintiff, were responsible for hiring, supervising, setting pay, and paying plaintiff, and that they possessed the power to terminate plaintiff. (Id.)

9

Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that the individual defendants were employers within the meaning of the NYLL and the FLSA and are jointly and severally liable with City Scrap and City Metal for the judgment.

### D. Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiff has sufficiently established liability so as to warrant entry of a default judgment. See 29 U.S.C. § 207(a)(1).

Here, it is beyond dispute that defendants are in default. Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings. Moreover, the failure by the corporate defendants City Scrap and City Metal to obtain counsel in this case constitutes a failure to defend because, as corporations, they cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Defendants also failed to respond to plaintiff's request that default be entered, and they did not submit papers in response to plaintiff's motion for default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear—it does not even oppose this motion"). Thus, plaintiff's evidence on damages is undisputed.

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay the

case any further. Accordingly, it is respectfully recommended that default judgment be entered against defendants.

II. <u>Damages</u>

Plaintiff seeks backpay, liquidated damages, and statutory damages for the FLSA and NYLL violations.[8] Although plaintiff originally requested attorney's fees (see Compl. ¶¶ 47, 55), he does not appear to be asking for it this motion.

**A. Legal Standard**

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability. See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65; <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing <u>United States v. Di Mucci</u>, 879 F.2d 1488, 1497 (7th Cir. 1989)); <u>Deshmukh v. Cook</u>, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the

---

[8] Plaintiff also initially requested a "declaratory judgment" that defendant's practices are unlawful, as well as an injunction against defendant from engaging in said practices. (See Compl. at 8). However, plaintiff now only seeks monetary damages. (See Lee Aff. ¶ 19; id., Ex. H (setting forth proposed Order)). Additionally, plaintiff's Complaint originally sought prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004. (See Compl. at 15). Although courts have granted requests for interest in wage and hour cases like this, see <u>Blaszczyk v. M3 Dev. Grp. Inc.</u>, No. 18 CV 5641, 2020 WL 9812919, at *5 (E.D.N.Y. Nov. 3, 2020); <u>Sarmiento Perez v. Comhar Grp. LLC</u>, No. 19 CV 0964, 2020 WL 1364908, at *7 (E.D.N.Y. Mar. 6, 2020), <u>report and recommendation adopted</u>, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); <u>Easterly v. Tri-Star Transp. Corp.</u>, No. 11 CV 6365, 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015), plaintiff failed to request prejudgment interest in his motion papers. Therefore, this Court has only considered plaintiff's request for relief as set forth in his current motion.

11

amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, because the plaintiff has provided a reasonably detailed affidavit in support of his request for damages, the Court sees no reason not to proceed.

### B. Backpay – Minimum Wage and Overtime

Plaintiff seeks reimbursement for overtime wages that he should have received pursuant to both the FLSA and NYLL, and unpaid minimum wages under the NYLL.[9] (Compl. ¶¶ 39-42, 51-52). Although plaintiff has alleged that he was not paid properly in violation of both the FLSA and the NYLL, plaintiff is "not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (internal quotation marks and citations omitted), report and recommendation adopted as modified, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar.

---

[9] Again, the Court notes that plaintiff appears to acknowledge that he would not recover under the FLSA for his minimum wage claims as his damages calculations refer only to unpaid minimum wages under the NYLL. (See Dam. Calc.). In any event, plaintiff would only be able to recover under one of the statutes.

12

10, 2014), report and recommendation adopted as modified, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014); see also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").

Plaintiff "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)). Since his recovery under the NYLL would be greater because the minimum wage rate, and the corresponding overtime rate, in New York during the time of his employment was higher than the federal minimum wage rate, the Court has calculated damages owed under the NYLL. Compare N.Y. Lab. Law § 652 (setting minimum wage rate at $15 during plaintiff's year of work) with 29 U.S.C. § 206(a) (setting minimum wage rate at $7.25).

    1) <u>Minimum Wages Owed</u>

Plaintiff alleges that he was paid at the rate of $13 per hour from February 2019 to June 2019 for each of the first 40 hours he worked.[10] (Compl. ¶ 26; Dam. Calc.). From January 1, 2019 on, the applicable minimum wage rate in New York was $15.00 an hour. N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.1(a)(1)(i). Based on this information, plaintiff contends that he was not paid the minimum wage pursuant to the NYLL for the first 40 hours he worked each week. (See Dam. Calc.).

Thus, for the period from February 1, 2019 to June 30, 2019, had plaintiff been paid at

---

[10] Although plaintiff cites "February 2019" and "June 2019" as his dates of employment, (see Compl. ¶ 25), plaintiff uses February 1, 2019 and June 30, 2019 as the dates in his damages calculations. (See Dam. Calc.). Thus, having been provided no other date by plaintiffs or defaulting defendants, the Court has used these dates in all subsequent calculations.

13

the proper minimum wage rate under the NYLL, he would have been paid $15 per hour. This reflects an underpayment of $2 per hour for each of the first 40 hours that he worked. Plaintiff thus argues that he is owed unpaid minimum wages totaling $1,714.29. (See id.). Although the Court reached a slightly higher amount based on its own calculations,[11] the Court recommends that plaintiff be awarded $1,714.29 in unpaid minimum wages.

2) Overtime Pay

As for his claim for overtime pay, plaintiff was entitled to receive time and a half for every hour that he worked over 40 hours in a week. See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.2. For claims against employers who are not in the hospitality industry, as in this case, the NYLL instructs that the overtime pay . . . should be calculated 'in the manner and methods provided in' the FLSA." Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *8 n.6 (E.D.N.Y. Jan. 14, 2022) (citation omitted); see N.Y.C.R.R. § 142-2.16. Under the FLSA and the non-hospitality NYLL provision, plaintiff's regular rate is calculated by "dividing the total hours worked during the week into the employee's total earnings." N.Y.C.R.R. § 142-2.16.

However, since plaintiff was paid less than the minimum wage, the overtime calculation "must be based on the minimum wage to which [he] was entitled." Won v. Gel Factory, Corp., No. 20 CV 5269, 2022 WL 903121, at *6 (E.D.N.Y. Jan. 25, 2022) (citation omitted), report and recommendation adopted, 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022); see Suriel v. Cruz, No. 20 CV 8442, 2022 WL 1750232, at *15 (S.D.N.Y. Jan. 10, 2022), report and recommendation adopted, 2022 WL 1751163 (S.D.N.Y. May 31, 2022). Plaintiff's overtime rate would therefore be $22.50 per hour for all relevant time periods, or the applicable minimum wage of $15.00

---

[11] The Court's calculations are as follows:
Feb. 1, 2019 – June 30, 2019: $2 per hour x 40 hours per week x 21.43 weeks = $1,714.40.

14

multiplied by 1.5. Plaintiff alleges that he worked 53 hours per week, which amounts to 13 hours of overtime per week. (Compl. ¶ 13). Plaintiff states that he was paid $19.50 for each of the 13 hours worked over 40 per week. (See Dam. Calc.). Thus, plaintiff was underpaid for 13 hours by $3.00 per hour. (Id.) Plaintiff states that he is owed $835.71 for these underpaid hours.

Plaintiff further alleges that he was not compensated at the overtime rate for "at least seven (7)" additional hours per week for which he received no pay at all. These seven hours were in addition to the 53 hours for which he was paid. (Id. ¶ 27). Plaintiff may recover for these unpaid hours at the full NYLL overtime rate. See Castelluccio v. Alphera Int'l N.A., LLC, No. 20 CV 4050, 2021 WL 7283080, at *5 (E.D.N.Y. June 9, 2021). Plaintiff states that he is owed overtime wages for these additional hours totaling $3,335.71. (Dam. Calc.). Having reviewed plaintiff's calculations and conducted the Court's own calculations, which, like the unpaid minimum wages calculations resulted in a slightly higher amount,[12] the Court finds that plaintiff should have been paid a total of $4,191.42 in overtime compensation. (Id.)

Having reviewed plaintiff's damages calculations, the Court respectfully recommends that plaintiff be awarded $5,905.71, representing $1,714.29 in unpaid minimum wages and $4,191.42 in unpaid overtime wages.

### C. Liquidated Damages

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to both

---

[12] The Court's calculations are as follows:
Overtime Wages (underpayment): Feb. 1, 2019 – June 30, 2019: $3 per hour x 13 hours per week x 21.43 weeks = $835.77.
Overtime Wages (failure to pay): Feb. 1, 2019 – June 30, 2019: $22.50 per hour x 6.96 hours per week x 21.43 weeks = $3,355.94. Plaintiff uses 6.96 hours as his total for unpaid hours, although the Complaint states that he was not paid for "at least seven" hours each week. (Compl. ¶ 27). However, the Court will use plaintiff's figures for the Court's calculations.
The total amount for the overtime wages as calculated by this Court is $4,191.71.

15

state and federal law. (See Compl. ¶¶ 47, 55[13]); N.Y. Lab. Law § 663(1). Plaintiff claims he is entitled to liquidated damages under the NYLL for the entire period, amounting to a total of $5,905.71 in liquidated damages on those unpaid wages and overtime. (See Dam. Calc. at 2; Lee Aff. ¶ 19).

The NYLL provides for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments. N.Y. Lab. Law §§ 198(1-a), 663(1). Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful. Id. § 663(1). However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)). Under the NYLL, therefore, the employer bears the burden of proving good faith and reasonableness. The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 142).

Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under the NYLL. Accordingly,

---

[13] Although plaintiff initially stated that he was entitled to liquidated damages under both the FLSA and the NYLL (see Compl. ¶¶ 47, 55), plaintiff is inconsistent in his request for liquidated damages. (Compare Lee Aff. ¶ 19 (requesting damages only under the NYLL) with Pl.'s Mem. at 9 (requesting liquidated damages under both)). In any event, plaintiff is not entitled to an award of liquidated damages under both statutes. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) (holding "we therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct"). Since plaintiff will recover the higher award of damages under the NYLL, the Court has only considered the NYLL liquidated damages request.

16

the Court recommends awarding plaintiff an additional $5,905.71 in liquidated damages, which is equal to the amounts due in unpaid minimum and overtime wages.

### D. Statutory Damages for Wage Notice Violations

Plaintiff also alleges that defendants never provided him with a wage notice at the time of hiring, nor did defendant provide updated notices when necessary, or proper wage statements, as required by NYLL §§ 195(1) and 195(3). (Lee Aff. ¶¶ 16-17; Compl. ¶¶ 53-54).

Section 195(1) requires that an employer provide a notice to the employee, at the time of hiring, that sets forth the rate of pay, allowances, and other specified information. N.Y. Lab. Law § 195(1). Employers are also required to provide such a notice whenever any of the information required by the notice, such as the rate of pay, changes. Id. Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. Id. § 195(3).

The statute provides that an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00. See id. § 198(1-d). Similarly, an employee can recover $50.00 for each workday that the employer was in violation of Section 195(1), up to a statutory maximum of $5,000.00. See id. § 198(1-b).

Here, plaintiff alleges that he did not receive the required wage notice at the time of hire or at any point in time, nor was he provided with wage statements when he received his wage payments. (See Compl. ¶¶ 53-54). Although plaintiff did not provide exact start and end dates, his damages calculations begin on February 1, 2019 and run until June 30, 2019. (See Dam. Calc.). Since there are 21 weeks in that period and plaintiff alleges that he worked 6 days each

17

week, defendants are alleged to have violated the wage notice and statement provisions for a total of 126 days. Section 195(1) allows recovery for a maximum of 100 days, while Section 195(3) allows recovery for a maximum of 20 days. Accordingly, plaintiff is entitled to receive an additional $5,000 for each of these statutory violations, or $10,000 in total, as a penalty for defendants' violation of these sections.

### E. Attorney's Fees

In his Complaint, plaintiff requested attorney's fees under both the FLSA and NYLL. (Compl. ¶¶ 48, 55). Both the FLSA and NYLL allow for an award of attorney's fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 663(1). Indeed, under the FLSA, the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action. Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" (quoting 29 U.S.C. § 216(b))); see also, Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013). Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. Law § 663(1). Section 663 provides that successful employees are entitled to:

> recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . .

Id. Plaintiff is a prevailing party under the FLSA and NYLL if he "'succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'" Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990)

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs. However, plaintiff does not make a request for fees in his motion for default judgment, stating only that he is entitled to attorney's fees and costs, without providing any supporting documentation as required by the Second Circuit in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). (See Pl.'s Mem.). The Court respectfully recommends that if plaintiff wishes to pursue fees and costs, plaintiff's counsel be given 30 days to submit his motion, along with the necessary supporting documentation.

## CONCLUSION

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiffs be awarded $21,811.42, which includes $5,905.71 for compensatory damages, $5,905.71 for liquidated damages, and $10,000 for statutory penalties. However, because plaintiffs have not included calculations for their attorney's fees, the Court recommends that plaintiffs be allowed to supplement their calculations within 30 days from the filing of this Report and Recommendation, or by August 22, 2022.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a…report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

Plaintiff is directed to serve this Report and Recommendation on the defendants and file proof of service on the docket by <u>July 27, 2022</u>.  The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through ECF system or by mail.

**SO ORDERED.**

Dated: July 22, 2022
       Brooklyn, New York

                                      */s/ Cheryl L. Pollak*
                                      CHERYL L. POLLAK
                                      Chief United States Magistrate Judge
                                      Eastern District of New York